# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1997

FILED

December 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| CLAUDE KENT GREGG, | ) | C.C.A. NO. 03C01-9705-CC-00188 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | HAMBLEN COUNTY |
| VS. | ) | |
| | ) | HON. JAMES E. BECKNER |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Vehicular Homicide) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF HAMBLEN COUNTY

<u>FOR THE APPELLANT</u>:

HEISKELL WINSTEAD
4325 Highway 66 South,
Suite 101
Rogersville, TN 37857

<u>FOR THE APPELLEE</u>:

JOHN KNOX WALKUP
Attorney General and Reporter

PETER M. COUGHLAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

C. BERKLEY BELL
District Attorney General
510 Allison Street
Morristown, TN 37814

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Claude Kent Gregg, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Hamblen County jury of vehicular homicide by intoxication[1], a Class C felony at the time the offense was committed.[2] He was sentenced as a standard offender to the minimum of the range of three years incarceration to be served in the Hamblen County Jail. The Defendant raises two issues in this appeal: (1) That the evidence was insufficient to support a verdict of guilt for vehicular homicide, and (2) that the trial judge abused his discretion by denying probation. We affirm the judgment of the trial court.

At approximately 2:40 a.m., Terry Sexton, an officer with the Morristown Police Department was at the intersection of Liberty Hill and East Morris Boulevard in Morristown. He observed a blue Chevrolet Camaro pass him heading eastbound at approximately 48 to 50 miles per hour. Officer Sexton followed the Camaro, which increased its speed to approximately 61 miles per hour. The officer stopped the vehicle. The driver of the Camaro was the Defendant, with whom Officer Sexton was acquainted. A somewhat heavy-set, blonde woman was seated on the front passenger side of the vehicle. The Defendant got out of his vehicle. Officer Sexton detected no odor of alcohol and observed that the Defendant was steady on his feet. Backup officer Chris Lawson arrived in his cruiser and watched from inside the car. The Defendant

---

[1] Tenn. Code Ann. § 39-13-213(a)(2)(1991).

[2] The legislature has subsequently amended the vehicular homicide statute, providing that a conviction involving intoxication constitutes a Class B felony. Tenn. Code Ann. § 39-13-213(b).

waved to him. As Officer Lawson was leaving, he saw a heavy-set blonde woman, later identified as Amanda Fuell, in the passenger seat of the Camaro. After talking with the Defendant for approximately five minutes, Officer Sexton warned him about his speed and let the Defendant proceed. The Defendant was driving the Camaro when he left.

About twenty (20) minutes later, Paul Carr and his ex-wife were talking in his home when they heard a loud noise. They ran to the window and saw that it was a car accident and that the electrical wires were down. Paul Carr called 911, got his flashlight and went outside. He saw that a car had hit a power pole. He maneuvered his way through the downed power lines and saw a woman in the car. She did not appear to be breathing. He heard a noise and saw the Defendant lying on the driveway. The Defendant was breathing, but it sounded choked. The female was lying on her back across the driver's side seat. The passenger side was crushed into the middle of the car.

Sheriff's Captain Otto Purkey was the first to arrive at the scene of the accident on Highway 11-E in Whitesburg. He arrived at 3:13 a.m. He observed the Defendant lying in the driveway. He also saw the female passenger lying in the car, and she appeared to be dead. She was lying partially on her back across the console. Her feet were under the passenger dashboard. The hatchback and "T-tops" from the roof were gone. Captain Purkey notified the Tennessee Highway Patrol to investigate the accident.

Tracy Sebastian, a paramedic with the Morristown-Hamblen E.M.S., arrived on the scene. He examined the Defendant, then examined Ms. Fuell and

determined that she was dead due to the apparent injuries and the absence of life signs. He called for an extrication unit because it was apparent that it would be necessary to remove the female victim. He called for an ambulance to transport the Defendant to the hospital. The Defendant was combative while Sebastian attempted to intubate and immobilize him. Sebastian noticed the smell of alcohol emanating from the Defendant's mouth. The Defendant was bleeding and his blood also smelled like alcohol.

Ms. Fuell, the female victim, appeared pulseless and apneic, and her color was pale, indicating substantial bleeding. There was bleeding from the head and arms, as well as multiple lacerations over her body. Sebastian also noted that the car was pushed in on the right side. The victim's arms and head were hanging out at the edge of the driver's side door and her body was in front of or underneath the steering wheel.

Rob McFarlane was the paramedic in charge of the accident scene. He arranged for a Lifestar helicopter to transport the Defendant to Knoxville for treatment. McFarlane was informed by another paramedic that Ms. Fuell was dead. McFarlane looked in the car only briefly for some equipment and glanced at the victim. He assumed she was the driver and listed the Defendant as a passenger in the wreck. McFarlane treated the Defendant. He testified that the Defendant was unconscious, but became combative during the ambulance ride.

Bryan Robinson was one of the extrication personnel with the Morristown Rescue Squad which was called to the scene. The squad was dispatched at approximately 3:11 a.m. and arrived on the scene at 3:23 a.m. They used an

"omni tool" to pry the driver's side door off. The steering wheel appeared to be on the victim's chest. The victim appeared to be of stocky build. Mr. Robinson observed that her torso was lying across the console and the lower part of her legs were under the passenger side dashboard. The team pushed up the dashboard to remove the victim.

Dr. John Theodore Hancock treated the Defendant at Morristown-Hamblen Hospital before he was transported to Knoxville. A test revealed that the Defendant had a 0.125% blood alcohol level, over the legal limit of 0.10%.[3] The Defendant appeared to have a closed-head injury. No pain medication was administered. Another blood alcohol test conducted at approximately 5:25 a.m. at the University of Tennessee Hospital in Knoxville showed a blood level of 0.11% alcohol. Dr. Hancock also examined the victim, Amanda Fuell. She appeared to have crepitus, or air pockets, under her skin, indicative of some type of trauma. Her front tooth was broken and the ring finger on her left hand was displaced. She also had multiple lacerations on the left thigh and calf.

Trooper David Michael Brown conducted an investigation regarding the accident. He arrived at the scene at approximately 3:46 a.m. Emergency personnel and Captain Purkey were already at the scene. He determined that it was a one-vehicle accident. The blue Camaro was traveling east on 11-E towards Bulls Gap. The vehicle left the roadway and slid 172 feet through a yard until it struck a utility pole broadside at the passenger door. The Defendant had been ejected. The other occupant, Ms. Fuell, was lying across the driver's seat, partially on her back. Her head was down towards the rocker panel of the driver's

---

[3] Tenn. Code Ann. § 55-10-401(a)(2).

door, her hips were lying across the console, and her feet were in what was left of the passenger compartment under the dashboard. The car was a 1985 blue Camaro registered to the Defendant. The passenger door was compressed into the dashboard. The glass in the hatchback was gone and the "T-tops" were found some distance away. Slide marks were evident in the grass the night of the accident, but were gone the next day after the grass was mowed. He inventoried the vehicle and found photographs and a pool cue. On cross-examination, Trooper Brown admitted that he made no reference to the location of the victim's feet in the report he had filed. No fiber tests were conducted on the car. Trooper Brown denied that anyone pointed out the presence of hair on the passenger door or the windshield. He did not find any jewelry in the vehicle. No fingerprints tests were conducted.

The Defendant's mother, Billie Reedy, testified on his behalf. She stated that she pointed out to Trooper Brown the presence of hair on the passenger door that looked like her son's. She also testified that she showed him long blonde hair by the driver's door. She also drove from the intersection of Hale and East Morris Boulevard, where the Defendant was initially stopped, and the location of the wreck. She estimated the distance at 7.7 miles and that it took ten minutes to get there when traveling 40 to 45 miles per hour.

Trena Jefferson, the Defendant's sister, testified that she examined the vehicle after the accident. She found part of a clip-on earring on the driver's side dashboard. She also found blonde hair on the driver's door and the steering wheel. She stated that Ms. Fuell did not have pierced ears and that they worked together as hair stylists.

The Defendant testified at trial. He stated that he had no memory of the accident. He did remember that he was in the Army in 1994, and that he went to the "Rod Run" in Pigeon Forge, Tennessee, in April, 1995. He did not remember the victim, Amanda Fuell. He recalled that he was in rehabilitation for his arm. On cross-examination, the Defendant stated that he started to regain his memory three days before he was scheduled to be released from the hospital. He did not recall drinking before the accident. The State introduced a hospital record containing statements made by the Defendant about his life: "Satisfactory sex life, no children, live in a ranch-type home, four people live in the home." The Defendant did not recall making any statements.

The State offered Trooper Brown in rebuttal, who again denied that anyone showed him hair on the wrecked vehicle. Lisa Harris also testified that Ms. Fuell had pierced ears because she had pierced the victim's ears approximately two months before the accident. She admitted that someone could wear another type of earring even if one's ears were pierced. Steve Barnard testified that he left a leather jacket at the Defendant's house in January or February of 1995. He talked to the Defendant about the jacket after the wreck and the Defendant remembered that it was at the house. Mitsy Crittendon testified for the Defendant that she saw Billie Reedy show Trooper Brown the hair on the vehicle.

The jury found the Defendant guilty of vehicular homicide while intoxicated, a Class C felony. He was sentenced to the minimum sentence of three years. The trial court denied probation and ordered the Defendant to serve his sentence in confinement. The Defendant appeals both his conviction and sentence.

I. Sufficiency of the Evidence

As his first issue, the Defendant argues that the evidence was insufficient to support a verdict of guilt for vehicular homicide. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

In the case at bar, the Defendant contends that the evidence was insufficient to prove that he was driving the automobile when the accident

occurred. The elements necessary to prove vehicular homicide by means of intoxication are that there was a "reckless killing of another by the operation of an automobile . . . [a]s the proximate cause of the driver's intoxication as set forth in § 55-10-401." Tenn. Code Ann. § 39-13-213 (a)(2). Tennessee Code Annotated section 55-10-401 states:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
>
> (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

The Defendant notes that the case against him was purely circumstantial. He maintains that the he was convicted based on circumstantial evidence alone and that the State did not rule out the reasonable possibility that Ms. Fuell was driving the Camaro. A crime may be established by circumstantial evidence alone. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, before an accused may be convicted of a criminal offense based only upon circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, a "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other

reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 484, 613.

The Defendant highlights the fact that the victim was trapped in the car with her chest pressed under the steering wheel and that he was found outside of the vehicle. He also contends that when he was stopped for speeding approximately thirty minutes before the accident, he did not appear intoxicated. He argues that Ms. Fuell's position in the car, her broken tooth, her left finger out of joint and the lacerations to the left side of her body suggest that she was driving. The Defendant highlights the fact that more time passed than that needed to travel the distance between where he was stopped and where the accident occurred and that no alcoholic beverage containers were found in or near the wreck.

Yet, after a careful review of the evidence considered in the light most favorable to the State, we must conclude that the evidence was sufficient to convict the Defendant of vehicular homicide. The Defendant focuses on the way the victim was found in the vehicle. He suggests that it indicates that she could have been driving the vehicle. However, neither the State nor the Defendant offered evidence that, in any way, demonstrated that the victim was more likely to have been driving the vehicle than that she was a passenger. There has been no explanation regarding the source of the victim's injuries. Nor does the timing of the accident lend itself to any particular hypothesis regarding who was driving or what occurred in the interim. Furthermore, the existence and location of hair and jewelry in the vehicle was contested and clearly resolved by the jury in favor of the State. Indeed, the State presented evidence that the vehicle involved in the accident was registered to the Defendant and that he was driving shortly

before the accident. Although he did not appear intoxicated at the traffic stop, the Defendant's blood alcohol was 0.125% after the accident and a paramedic smelled alcohol on his breath. Furthermore, the witnesses at the scene described the victim as draped over the driver's side, but her feet were pinned or located under the passenger's side dashboard.

We recognize that in cases involving circumstantial evidence, the State's proof must exclude all other reasonable hypotheses. Yet, when considering the evidence presented at trial, it is apparent that the jury did not consider the Defendant's theory a reasonable one. The location of the victim's body in the vehicle, without more, is not probative of any theory. Again, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. In this light, there was sufficient evidence to support the Defendant's conviction. Therefore, we conclude that this issue is without merit.

## II. Denial of Probation

In his second issue in this appeal, the Defendant argues that the trial judge abused his discretion in failing to grant probation. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Although probation "must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) (1990) (Sentencing Commission Comments). This Court must begin its sentencing determination by reviewing the purposes of sentencing set forth in Tennessee Code Annotated section 40-35-102. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997).

If an accused has been convicted of a Class C, D or E felony and sentenced as an especially mitigated or standard offender, there is a

presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tennessee Code Annotated section 40-35-102 provides in part:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption. Ashby, 823 S.W.2d at 169. As our supreme court said in Ashby: "If [the] determination is favorable to the defendant, the trial court must presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." Id. "Evidence to the contrary" may be found in applying the considerations that govern sentences involving confinement, which are set forth in Tennessee Code Annotated section 40-35-103(1):

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See Davis, 940 S.W.2d at 561; Ashby, 823 S.W.2d at 169. The presumption can be successfully rebutted by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source provided it is made a part of the record. State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993).

Beyond this, a defendant has the burden of establishing his or her suitability for total probation. Tenn. Code Ann. § 40-35-303(b). To be granted full probation, a defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)(citing Hooper v. State, 201 Tenn. 156, 161, 297 S.W.2d 78, 81 (1956)). The trial court must consider a sentence which is the "least severe measure necessary to achieve the purposes for which the sentence is imposed" and "[t]he potential or lack of potential for the rehabilitation or treatment for the defendant." Tenn. Code Ann. § 40-35-103(4), (5).

In the case sub judice, the State proposed no enhancement factors, nor were any mitigating factors considered. The trial judge sentenced the Defendant to the three (3) year minimum in the range for a standard offender for a Class C

felony.[4] The trial judge properly considered the Defendant a presumed candidate for alternative sentencing. The State offered no rebuttal evidence. The Defendant offered witnesses who testified that he would be a suitable candidate for full probation. The presentence report indicates that the Defendant was twenty-five years old at the time of sentencing. He graduated from Cherokee High School in 1989, served in the Army until 1994, and worked for Minco before and after the accident. He had no criminal record, but reported a speeding ticket in Knoxville in 1994.

The trial court considered several factors, but emphasized that deterrence was an important reason for denying probation. The trial judge stated: "Unfortunately, drinking and driving cases are now consuming most of the dockets in the four counties that I go to, including Hamblen County. I don't know why, but already this month we've tried more DUI's than anything else, and that's true in Greene County and Hawkins County . . . ." The trial judge also considered the circumstances of the offense in denying probation. Namely, he mentioned the blood alcohol level and that someone was killed in the accident. However, he added that probation would not serve the ends of justice because of the need for general deterrence.

Probation may be denied based on the circumstances of the offense, however "as committed, [they] must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,'

---

[4] In 1995, shortly after the offense in question was committed, the legislature raised the offense of vehicular homicide as the proximate result of intoxication from a Class C felony to a Class B felony, with a minimum sentence for a Range I offender of eight (8) years. See Tenn. Code Ann. § 39-13-213(b); Tenn. Pub. Acts.1995, ch. 415, § 1.

and the nature of the offense must outweigh all factors favoring probation." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); State v. Cleaver, 691 S.W.2d 541, 543 (Tenn. 1985). This principle has been codified in section 40-35-103(1)(B) which considers confinement to avoid depreciating the seriousness of the offense. State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991); see also State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). Sentencing decisions should not, however, turn on a generalization of the crime committed, such as the fact that a death occurred. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); but see State v. Ramsey, 903 S.W.2d 709, 714 (Tenn. Crim. App. 1995).

Probation may also be denied based on whether the sentence will deter others. The Sentencing Act provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by ... [p]roviding a general deterrent to those likely to violate the criminal laws of this state." Tenn. Code Ann. § 40-35-102(3)(A). Also, our supreme court has reiterated that "because there is a degree of deterrence uniformly present in every case, however, the significance of this factor 'varies widely with the class of offense and the facts of each case' . . . a 'finding of deterrence cannot be conclusory only but must be supported by proof.' Davis, 940 S.W.2d at 560(citations omitted).

The trial court considered the circumstances of the offense to deny probation. He noted the blood alcohol level and the fact that someone was killed as a result of the crime. Although the accident was obviously violent and horrifying, the fact that the victim died is not a controlling consideration when death is an element of an offense otherwise eligible for alternative sentencing.

State v. Bingham, 910 S.W.2d 448, 556 (Tenn. Crim. App. 1995). However, the State correctly counters that the goal of specific deterrence of the Defendant should be considered. The Defendant was pulled over by an officer because of his speed just minutes before the accident occurred. Clearly, the warning was not effective, the State argues, because the speed he was traveling before the accident was sufficient to carry the vehicle 172 feet off the roadway and into a utility pole. We agree that the fact that the Defendant was warned just prior to the accident merits consideration to deter him from such future conduct.

The trial court also found the need for deterrence of drunken driving in Hamblen County. The Defendant argues that there was not sufficient proof of the need for deterrence as required by Ashby. However, the trial court specifically noted that the court dockets he worked on were consumed by DUI offenses. We conclude that this, in conjunction with the circumstances of the offense, were sufficient grounds upon which to deny probation. We conclude that the trial judge did not abuse his discretion in denying probation for the Defendant.

Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

-18-

_____
GARY R. WADE, JUDGE


_____
JERRY L. SMITH, JUDGE